IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SHIRLEY SMITH,                      §
                                    §
            Plaintiff,              §
                                    §
v.                                  §        CIVIL ACTION NO. H-03-5900
                                    §
SEAN O'KEEFE, Administrator,        §
NASA,                               §
                                    §
            Defendant.              §

MEMORANDUM AND ORDER

Pending are Defendant Sean O'Keefe's Motion to Dismiss Pursuant to Rule 12(b)(1) (Document No. 29) and Motion for Summary Judgment (Document No. 30). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows:

I. Background

Plaintiff Shirley Smith ("Plaintiff") brings this action against Defendant Sean O'Keefe ("Defendant"), in his capacity as Administrator of the National Aeronautics and Space Administration ("NASA"). Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by discriminating against her on account of her race and age and by retaliating against her for filing a charge

of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff also alleges that Defendant violated 42 U.S.C. § 1983 by engaging in a pattern and practice of denying promotions to qualified applicants.

In her Complaint, Plaintiff states that she is a 64-year-old African-American female with approximately 16 years of relevant experience as a contract specialist/administrator with the NASA Johnson Space Center ("JSC"). Document No. 1 ¶ 3. Plaintiff began working at the JSC in August 1984 as a GS-5 employee in the Simplified Acquisitions Branch. Id. ¶ 10. Over the next 15 years, Plaintiff worked in several positions within the Acquisitions Policy and Systems Office and Business Management Directorate, "always receiving better than average performance reviews and appraisals." Id.

In August 2000, Plaintiff applied for the GS-1102-13 Contract Specialist position advertised by Defendant under Vacancy Announcement No. FY00-071. Id. ¶ 9. At that time, Plaintiff was employed as a GS-12 Contract Specialist in the Procurement Policy and Systems Office and had "more than seven (7) years of experience in contract administration[,] including contract analysis, evaluation[,] and pricing." Id. ¶ 11. Plaintiff alleges that despite her superior qualifications and experience, she did not receive the position. Id. ¶¶ 9, 11. Instead, the manager of the Procurement Policy and Systems Office, Connie Poole ("Poole"), selected Rose

Herrera ("Herrera"), a Hispanic female who was just over 50-years old at the time and who Plaintiff contends was less qualified for the GS-13 position. <u>Id.</u> ¶ 11; Document No. 30 ex. B ¶ 4.

Believing she was not selected for the GS-13 position because of her race, Plaintiff filed a charge of discrimination with the EEOC on February 22, 2001. Document No. 1 ¶¶ 5, 13. Thereafter, Plaintiff alleges, she was relocated to another procurement office at the JSC and placed under the supervision of the Director of Procurement, Randy Gish ("Gish"). <u>Id.</u> ¶ 13. There, "she began to experience harsher working conditions and a different type of appraisal and job evaluation process." <u>Id.</u> More specifically, Plaintiff alleges that she "was subject to a different standard and system of Performance Plan in her position of Contract Specialist, GS-1102-12." <u>Id.</u> ¶ 14. Moreover, "although her overall job rating was 'meets or exceeds[,]' she began to receive unwarranted and undocumented comments regarding her analytical skills." <u>Id.</u> According to Plaintiff, Defendant's actions "result[ed] in her being placed on sixty (60) day probationary period called 'Performance Improvement Plan' ["PIP"] on January 27, 2003." <u>Id.</u> ¶ 15. The Deputy Manager of the JSC Procurement Office, Laura Pepper ("Pepper"), was assigned to assist Plaintiff in improving the items noted in the PIP. <u>Id.</u> ex. C.

Four months later, Gish issued to Plaintiff a "Notice of Proposed Removal," in which he outlined various deficiencies in

Plaintiff's job performance--many of which were apparently reported
to Gish by Pepper.  Id. ¶ 16; ex. C.  Plaintiff filed a reply
disputing Pepper's assessment of her job performance and
complaining that Pepper was retaliating against her for having
filed an EEOC charge.  Id. ¶ 16; ex. D.  On July 14, 2003,
Plaintiff was given Gish's "Decision on Proposed Removal," in which
Gish explained that although he had carefully considered
Plaintiff's reply and investigated Plaintiff's allegations, he had
determined that there was "substantial evidence" that Plaintiff's
performance remained unacceptable after she was properly afforded
an opportunity to improve.  Id. ¶ 16; ex. E.  Therefore, Gish
stated, Plaintiff's employment was being terminated effective July
21, 2003.  Id. ex. E.  Gish informed Plaintiff, however, that
because she met the age and service requirements for retirement,
she had the right to retire prior to the effective date of the
termination in order to prevent her personnel file from reflecting
that she was terminated.  Id.  Gish explained that unlike a
termination, a voluntary retirement was not appealable to the
United States Merit Systems Protection Board ("MSPB") and thus
suggested that Plaintiff discuss the voluntary retirement option
with her attorney, representative, or advisor.  Id.[1]

---

[1] The MSPB is "is an independent, quasi-judicial federal
agency that is responsible, among other things, for adjudicating
appeals by federal employees from adverse personnel actions
including termination, demotions, and suspensions."  Document No.
29 at 5-6 (citing 5 U.S.C. §§ 7512, 7513(d), 7701).

In addition, Gish informed Plaintiff that she had a right to appeal the termination decision to the MSPB or to file a complaint of discrimination, and that "[w]hichever is first filed will be considered an election by you to proceed in that manner."  Id. Gish further stated that "[i]f you believe your removal is based on discrimination because of your race, color, religion, sex, national origin, age, or handicap, you may either: (1) file a complaint of discrimination with NASA in accordance with the Agency's discrimination complaint procedures, or (2) you may raise the issue of discrimination in connection with an MSPB appeal, but not both." Id.

Plaintiff elected to appeal her termination to the MSPB on August 14, 2003.  Document No. 1 ¶ 7; Document No. 29 ex. 1-1.  On the appeal form, Plaintiff designated Shani Denis of Brown, Brown & Reynolds, PC as her attorney.  Document No. 29 ex. 1-1 (Boxes 7-11).  In describing the reason for the appeal, Plaintiff stated: "I am appealing the removal of me from my job/position at the Johnson Space Center.  I know that this removal is retaliation (to me) because of the complaint I filed against NASA/JSC." Id. (Box 12). Plaintiff further stated: "This removal action was taken as retaliation against the discrimination complaint that I filed against NASA/JSC.  I had been asked several times to withdraw my complaint.  I was set up and terminated because I would not withdraw my complaint." Id. (Box 27).  In addition, Plaintiff

5

stated: "NASA/JSC should be accountable for the discrimination heaped against me.   NASA/JSC should be accountable for the retaliation (in the form of my removal from the position) that I received." Id. (Box 31).

On September 29, 2003, Plaintiff notified the presiding Administrative Law Judge ("ALJ") that she had retained new counsel, Ray L. Shackelford. See Document No. 29 ex. 1-10.  Two days later, the ALJ held a telephonic status conference with Plaintiff, her new counsel, and Defendant's counsel.   Id. ex. 1-11. During the conference, the ALJ noted that despite having been informed that Plaintiff's former counsel was no longer acting on her behalf, Plaintiff failed to conduct discovery during the discovery period and failed promptly to obtain substitute counsel.   Id.  The ALJ nevertheless agreed to suspend the appeal for 30 days to allow Plaintiff's new counsel an opportunity to respond to Defendant's discovery requests.   Id. exs. 1-11, 1-13.   When the 30-day suspension expired and Plaintiff's new counsel still had not responded to Defendant's discovery requests, Defendant filed a motion to compel on November 3, 2003.  Id. exs. 1-14, 1-15.

One week later, the ALJ signed a Notice and Order, in which she stated that she had been advised by Plaintiff's counsel on November 5, 2003 that Plaintiff was withdrawing her MSPB appeal with prejudice and that a written withdrawal would be submitted to the ALJ that same day.  Id. ex. 1-16.   The ALJ stated, however,

that as of November 10, 2003, she had not received a written notice of withdrawal.  Id.  Accordingly, the ALJ ordered Plaintiff to notify her in writing if Plaintiff desired to proceed with the appeal, and stated that if Plaintiff failed to do so by November 17, 2003, the appeal would be dismissed with prejudice.  Id. Plaintiff's counsel responded to the ALJ's order by a faxed letter, in which he stated that he was requesting on behalf of Plaintiff that the ALJ "abate and cease the above-referenced appeal with prejudice as my client has decided to proceed directly to U.S. District Court." Id. ex. 1-17.  Therefore, on November 12, 2003, the ALJ issued her Initial Decision dismissing the appeal with prejudice.  Id. ex. 1-18.  On December 31, 2003, Plaintiff filed the instant lawsuit in this Court.

Defendant now moves for dismissal and/or summary judgment on all of Plaintiff's claims on the following grounds: (1) the Court lacks subject matter jurisdiction over Plaintiff's retaliation and discriminatory discharge claims because she failed to exhaust her administrative remedies; (2) the Court lacks subject matter jurisdiction over Plaintiff's § 1983 claim because Title VII and the ADEA provide the exclusive remedies for race and age discrimination, respectively; and (3) Plaintiff cannot raise so much as a genuine issue of material fact in support of her discriminatory promotion claim.

7

## II.   Discussion

A.   Motion to Dismiss

    1.   Standard of Review

    Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Id. The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002).

    Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990); Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981); Santerre v. Agip Petroleum Co., 45 F. Supp. 2d 558, 566 (S.D. Tex. 1999). A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings. See Lawrence, 919 F.2d at 1529; Paterson, 644 F.2d at 523. When presented with a facial challenge to subject matter jurisdiction, the court examines whether the allegations in the pleadings are sufficient to invoke the court's subject matter jurisdiction, assuming the allegations to be true. Id.; Simmang v. Tex. Bd. of Law Examiners, 346 F. Supp. 2d 874, 880 (W.D. Tex. 2004).

Defendant includes with its motion to dismiss several exhibits. When accompanied by supporting evidence, a Rule 12(b)(1) motion challenging the court's jurisdiction is a factual attack. <u>Paterson</u>, 644 F.2d at 523. A plaintiff responding to a factual attack on the court's jurisdiction generally bears the burden of proving by a preponderance of the evidence that the court has subject matter jurisdiction. <u>Id.</u>

    2.   <u>Plaintiff's Retaliatory and Discriminatory Discharge Claims</u>

Defendant contends that the Court does not have subject matter jurisdiction over Plaintiff's Title VII and ADEA retaliatory and discriminatory discharge claims because Plaintiff failed administratively to exhaust them. "Title VII grants an aggrieved federal employee the right to file suit in federal district court, *see* 42 U.S.C. § 2000e-16(c), but before bringing suit, an employee must exhaust his administrative remedies against his federal employer." <u>Fitzgerald v. Sec'y, U.S. Dep't of Veterans Affairs</u>, 121 F.3d 203, 206 (5th Cir. 1997) (citing <u>Brown v. Gen. Servs. Admin.</u>, 96 S. Ct. 1961, 1965 (1976)); *accord* <u>Randel v. U.S. Dep't of Navy</u>, 157 F.3d 392, 395 (5th Cir. 1998). "If a federal employee fails to exhaust his administrative remedies, the district court cannot adjudicate the employee's Title VII claim." <u>Fitzgerald</u>, 121 F.3d at 206.

"Unlike [Title VII], the ADEA contains no express requirement that a federal employee complainant seek administrative relief, except that an employee who wishes to file suit without pursuing administrative remedies must give the EEOC notice of intent to sue at least 30 days before filing suit." Bankston v. White, 345 F.3d 768, 770 (9th Cir. 2003) (internal quotation marks omitted) (citing Stevens v. Dep't of Treasury, 111 S. Ct. 1562 (1991) (Stevens, J., concurring and dissenting); 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a)).  Alternatively, a federal employee has the option of pursuing her ADEA claim administratively, either through the federal agency's EEO procedures or through the MSPB.  Bankston, 345 F.3d at 770 (citing 29 U.S.C. § 633a(b); 29 C.F.R. § 1614.106; 5 U.S.C. § 7702).  Once a federal employee elects to pursue her ADEA claim administratively, however, the employee ordinarily must exhaust that avenue of relief before filing a civil action in federal court.  White v. Frank, 895 F.2d 243, 244 (5th Cir. 1990) (per curiam).[2]

---

[2] *But see* Bankston, 345 F.3d at 776-77 (holding that a federal employee's dismissal of his MSPB appeal did not deprive the district court of jurisdiction over his ADEA suit because there is no express exhaustion requirement in the ADEA (other than notifying the EEOC at least 30 days before filing suit, which the employee did); the Civil Service Reform Act does not expressly impose an exhaustion requirement on ADEA claims brought before the MSPB; and the rationale for a judicially-created exhaustion requirement (*i.e.*, avoiding duplicative, simultaneous administrative and judicial proceedings) was not present, given that there was no ongoing administrative proceeding and the employee had no right to further administrative relief).

10

The MSPB has jurisdiction over specific adverse employment actions affecting federal employees, including terminations, demotions, and suspensions. *See* Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir. 2004) (citing 5 U.S.C. § 7512). "When a federal employee has been subject of one of these actions, he is entitled to appeal to the MSPB." Id. (citing 5 U.S.C. § 7513(d)). Although the MSPB does not have jurisdiction over discrimination claims that are not related to appealable adverse actions, a federal employee who alleges that an appealable adverse action was based in whole or in part on race or age discrimination presents a so-called "mixed-case" that may be appealed directly to the MSPB. *See* 5 U.S.C. § 7702(a)(1)(B)(i)-(iv); Chappell, 388 F.3d at 1375 (citing 5 U.S.C. § 7702; 29 C.F.R. § 1614.302); *accord* Casimier v. U.S. Postal Serv., 142 Fed. Appx. 201, 204 (5th Cir. July 1, 2005) (unpublished) (citation omitted).[3]

"When a complainant appeals to the MSPB, either directly or after pursuing her claim with the agency EEO office, the matter is assigned to an Administrative Judge who takes evidence and eventually makes findings of fact and conclusions of law." Butler,

---

[3] Alternatively, the aggrieved federal employee can elect to file a "mixed case complaint" with her agency's EEO office. Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999). If the employee elects this route, within 30 days of a final EEO decision, or after 120 days pass without a EEO final decision, the employee can file a mixed-case appeal with the MSPB or a civil discrimination action in federal district court. Id. (citing 29 C.F.R. §§ 1614.302(d)(1)(ii), (d)(3); 1614.310(a)).

164 F.3d at 638.   "The administrative judge's initial decision becomes a final decision if neither party, nor the MSPB on its own motion, seeks further review within thirty-five days." Id. at 638-39 (citing 5 C.F.R. § 1201.113).   Thereafter, "the complainant again has a choice: within thirty days of receiving a final decision from the MSPB, she can either appeal the discrimination claim to the EEOC, *see* 5 C.F.R. § 1201.157, or appeal the entire claim (or any parts thereof) to the appropriate district court." Id. at 639 (citing 5 U.S.C. § 7703(b), 5 C.F.R. § 1201.175, 29 C.F.R. § 1614.310(b)); *see also* Chappell, 388 F.3d at 1375 ("In a mixed case, a final decision from the MSPB exhausts an employee's administrative remedies and allows him to seek judicial review.") (citing McAdams v. Reno, 64 F.3d 1137, 1141 (8th Cir. 1995)).

Here, Plaintiff elected to appeal her termination directly to the MSPB. In her MSPB appeal, Plaintiff alleged that she was terminated in retaliation for having filed a charge of discrimination (presumably related to her discriminatory promotion claim). *See* Document No. 29 ex. 1-1. Although Plaintiff did not expressly assert that the retaliation was in violation of Title VII and the ADEA, the Court nevertheless presumes that Plaintiff, who it appears completed the appeal form herself without the assistance

of counsel, properly presented a "mixed-case" appeal before the MSPB.[4]

Thereafter, however, Plaintiff repeatedly failed to participate in discovery and eventually withdrew her MSPB appeal with prejudice without giving the ALJ an opportunity to conduct a hearing and address the merits of the appeal. Because the ALJ dismissed the MSPB appeal as withdrawn without reaching the merits, Plaintiff did not exhaust her administrative remedies with respect to her retaliation claims. *See* McAdams, 64 F.3d at 1141-42 (holding that a federal employee who elects to file an appeal with the MSPB is required to exhaust her claims in that forum before filing a civil action and cannot assert in federal court discrimination claims that were abandoned before the MSPB); Vinieratos v. U.S. Dep't of Air Force, 939 F.2d 762, 770 (9th Cir. 1991) ("[A]bandonment of the administrative process may suffice to terminate an administrative proceeding before a final disposition is reached, thus preventing exhaustion and precluding judicial

---

[4] Assuming *arguendo* that Plaintiff's appeal did not qualify as a "mixed-case" appeal because she did not expressly allege that her removal violated Title VII or the ADEA, Plaintiff would be barred from pursuing her Title VII and ADEA claims in this Court. *See* Casimier, 142 Fed. Appx. at 204 ("In the instant case, Casimier elected to appeal his removal to the MSPB. However, in doing so, Casimier elected not to bring a mixed case appeal. Casimier did not file a mixed case appeal with the MSPB because he did not contend that his removal was based in whole or in part on discrimination. In failing to raise the issue of discrimination in his MSPB appeal, Casimier waived his right to challenge his termination based on discrimination.").

review."); Rivera v. U.S. Postal Serv., 830 F.2d 1037, 1039 (9th Cir. 1987) ("To withdraw is to abandon one's claim, to fail to exhaust one's remedies."); see also Taylor v. Dam, 244 F. Supp. 2d 747, 757 (S.D. Tex. 2003) ("[A]n aggrieved federal employee must elect an exclusive administrative remedy and fully exhaust the remedy chosen."); Harms v. Snow, 57 Fed. Appx. 720 (8th Cir. 2003) (per curiam) (affirming the district court's dismissal of an IRS employee's Title VII and ADA claims for failing to exhaust his administrative remedies; although the employee initially pursued his claims with the MSPB, he subsequently abandoned those claims and was therefore precluded from raising them in federal court). Accordingly, Plaintiff is precluded from pursuing her Title VII and ADA claims for retaliation in this Court.[5]

Likewise, Plaintiff's Title VII and ADEA discrimination claims are barred for failure to exhaust administrative remedies.

_____

[5] Even assuming arguendo that Plaintiff was not required to exhaust her MSPB appeal with respect to her ADEA retaliation claim, see Bankston, 345 F.3d at 777, Plaintiff's ADEA claim would still be barred because there is no evidence that Plaintiff filed with the EEOC a notice of intent to sue at least 30 days before bringing this suit. See 29 U.S.C. § 633a(d) (allowing an employee to file an ADEA suit without first pursuing administrative remedies but requiring 30 days' notice to the EEOC of intent to sue); see also Bankston, 345 F.3d at 773 (distinguishing Castro v. United States, 775 F.2d 399 (1st Cir. 1985), in which the First Circuit held that there was no jurisdiction over an ADEA claim where the plaintiff had dismissed his MSPB appeal before filing suit, on the ground that "administrative exhaustion may have been considered necessary in [Castro]" because the plaintiff "had not followed either of the two routes available to him: he had neither exhausted administrative remedies, nor filed a notice of intent to sue with the EEOC").

14

Although Plaintiff alleged in her MSPB appeal that her termination was retaliatory, she did not allege that it was also effected because of race or age discrimination. *See* Document No. 29 ex. 1-1. By filing a mixed-case appeal with the MSPB, Plaintiff made a binding election to pursue all of her claims for wrongful termination before the MSPB. *See* German v. Pena, 88 F. Supp. 2d 222, 225 (S.D.N.Y. 2000) ("Once an employee has chosen the agency in which he wishes to adjudicate his claims [either the MSPB or the agency's EEO], he is required to bring all claims relevant to his discharge in that proceeding."); *see also* Casimier, 142 Fed. Appx. at 204 ("[I]f an employee believes that discrimination is a component of an adverse personnel action, the issue of discrimination must be raised from the outset irrespective of whether the employee elects to file with his agency's EEO or the MSPB."). Because Plaintiff failed to assert her Title VII and ADEA discriminatory discharge claims before the MSPB, and therefore failed to exhaust them, Plaintiff's discriminatory discharge claims must be dismissed.

Plaintiff concedes that she failed to exhaust her Title VII and ADEA retaliatory and discriminatory discharge claims. Nevertheless, Plaintiff asks the Court to "apply equitable principles to excuse Plaintiff's technical failure to exhaust administrative remedies." *See* Document No. 35 at 4. Specifically, Plaintiff argues that her "failure to respond to discovery requests

propounded by the Defendant as well [as] the failure to initiate discovery in support of her affirmative defenses was due to the failure's [sic] of her previous counsel, and not some intentional act of obstructing the administrative process by the Plaintiff," and that "Defendant was clearly on notice as to Plaintiff's claims of discrimination and retaliation." Id. Neither of these arguments entitles Plaintiff to an equitable exception from the exhaustion requirement. See Rolland v. U.S. Dep't of Veterans Affairs, 146 Fed. Appx. 743, 746 (5th Cir. Aug. 23, 2005) (unpublished) ("A complainant's failure to follow administrative procedures, particularly where he is represented by counsel, is not one of the grounds for equitable [relief]."); Harris v. Potter, No. Civ. A. H-04-4779 2005 WL 2179794, at *3, 5-6 (S.D. Tex. Sept. 9, 2005) ("[T]he court rejects Plaintiff's argument that his claim should be exempt from the administrative requirements simply because USPS has had an opportunity to gather relevant information on his claims."). Plaintiff has failed to demonstrate that equitable relief from the exhaustion requirement is warranted in this case.

Because Plaintiff failed to exhaust her administrative remedies with respect to her Title VII and ADEA retaliatory and discriminatory discharge claims, and because there is nothing of record to justify equitable relief, Defendant's Motion to Dismiss will be granted.

16

### 3.   Plaintiff's § 1983 Claim

Defendant also correctly points out, and Plaintiff does not dispute, that Plaintiff cannot pursue claims for race and age discrimination under § 1983.  *See* Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996) ("Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees.") (citing Brown, 96 S. Ct. at 1969); Paterson v. Weinberger, 644 F.2d 521, 524 (5th Cir. 1981) ("[T]he ADEA became the exclusive remedy for age discrimination in federal employment."); Joseph v. Potter, Civ. A. No. H-04-1886, 2006 WL 1581894, at *4 (S.D. Tex. June 6, 2006) (holding that the Court could not assert jurisdiction over or consider the federal employee's race and age discrimination claims brought under § 1983 because Title VII and the ADEA provide the exclusive remedies for race and age discrimination, respectively, in federal employment).  Accordingly, Plaintiff's § 1983 claim will be dismissed.

### B.   Motion for Summary Judgment

### 1.   Standard of Review

Federal Rule of Civil Procedure Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

17

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing

18

<u>Matsushita</u>, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u>  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

   2.   <u>Plaintiff's Discriminatory Promotion Claims</u>

   Plaintiff contends that Defendant failed to promote her on account of her race and age.  Title VII proscribes an employer from discharging or otherwise discriminating against any individual because of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  The ADEA proscribes similar treatment on the basis of age.  *See* 29 U.S.C. § 623(a)(1); <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).  The same standard of proof applies to discrimination claims under both statutes.  <u>Roberson</u>, 373 F.3d at 651.  Because the same facts underlie both causes of action, Plaintiff's Title VII and ADEA claims are analyzed together.  *See* <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 967 (5th Cir. 1999).

   The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff." <u>Roberson</u>, 373 F.3d at 651.  Intentional discrimination can be established through either direct or circumstantial evidence.  <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 219 (5th Cir. 2001).  Because Plaintiff presents no

19

direct evidence of discrimination, her claims must be analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Id. Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case of discrimination. Id. To establish a prima facie case of discriminatory failure to promote under Title VII, Plaintiff must show that: (1) she is a member of a protected class; (2) she sought and was qualified for an available position; (3) she was not selected for that position; and either (4a) the employer awarded the position to someone outside the protected class, or (4b) after the employer rejected the plaintiff, the employer continued to seek applicants with plaintiff's qualifications. See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996). The first three elements are the same to establish a prima facie case of age discrimination under the ADEA; for the fourth element, the plaintiff must show that she was replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 309 (5th Cir. 2004).

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Reeves v. Sanderson

Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000).  The burden on
the employer at this stage "is one of production, not persuasion;
it 'can involve no credibility assessment.'"   Id. (quoting St.
Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)).  If the
employer sustains its burden, the prima facie case is dissolved,
and the burden shifts back to the plaintiff to establish either:
(1) that the employer's proffered reason is not true, but is
instead a pretext for discrimination (pretext alternative); or
(2) the employer's reason, while true, is not the only reason for
its conduct, and another "motivating factor" is the plaintiff's
protected characteristic (mixed-motive alternative).  Rachid, 376
F.3d at 312.  If the plaintiff "demonstrates that [her protected
characteristic] was a motivating factor in the [employer's decision
to terminate her], it then falls to the [employer] to prove 'that
the same adverse employment decision would have been made
regardless of discriminatory animus.'"  Id.  If the employer fails
to carry this burden, the plaintiff prevails.   Id.

     It is uncontroverted that Plaintiff has established a prima
facie case of race and age discrimination on her failure to promote
claim.   Likewise, it is uncontroverted that Defendant has arti-
culated a legitimate, non-discriminatory reason for its selection
of Herrera rather than Plaintiff for the GS-13 Contract Specialist
position--i.e., that Herrera was better qualified.   Therefore,
Plaintiff bears the burden of raising a genuine issue of material

fact either that Defendant's reason is not true but is instead a
pretext for race and age discrimination, or that Defendant's
reason, while true, was not the only reason for its decision and
other "motivating factors" were Plaintiff's race and age.
Plaintiff follows the pretext path and attempts to show that she
was clearly better qualified than Herrera for the GS-13 Contract
Specialist position.  *See* <u>Price v. Fed. Express Corp.</u>, 283 F.3d
715, 723 (5th Cir. 2002) ("[S]howing that the unsuccessful employee
was clearly better qualified is enough to prove that the employer's
proffered reasons are pretextual.").

    The posted "Qualification Standards" for the GS-13 Contract
Specialist position were (1) at least 4 years of contracting
experience, with 1 year equivalent to work at the next lower grade;
(2) a college degree supplemented by 24 hours of business related
courses; and (3) completion of all training requirements prescribed
by Headquarters Office of Procurement.  Document No. 36 ex. A-1.
The summary judgment evidence is that both Plaintiff and Herrera
met these criteria.  Plaintiff had 13 years of experience as a
Contract Specialist, held a B.S. degree in Business Education,
and had received both Level 1 and Level II training certificates.
<u>Id.</u> exs. A-2, A-5, A-6.  Herrera, on the other hand, had six years
of experience as a Pricing and Cost Analyst, one year of experience
as a Contract Specialist, held a B.S. degree in Accounting, and had
received a Level I training certificate.  <u>Id.</u> exs. A-7, A-8.

Although Plaintiff suggests that her longer tenure as a Contract Specialist and her additional training certificate made her the better qualified candidate for the GS-13 position, this argument lacks merit. *See* <u>Price</u>, 283 F.3d at 723 (affirming summary judgment for employer, observing that plaintiff's "better education, work experience, and longer tenure with the company" did raise a fact issue that plaintiff was clearly better qualified) (citing <u>Nichols v. Lewis Grocer</u>, 138 F.3d 563, 568-69 (5th Cir. 1998) (reversing district court's denial of employer's motion for judgment as a matter of law because the losing applicant's longer tenure and more varied work experience with the company did not make her "clearly better qualified" than the winning applicant)); *see also* <u>Deines v. Tex. Dep't of Protective & Regulatory Servs.</u>, 164 F.3d 277, 280-81 (5th Cir. 1999) ("[D]isparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.").

Moreover, Plaintiff's argument that Herrera lacked sufficient experience as a Contract Specialist is without support and lacks merit. Plaintiff points out that the official Position Description for GS-12 Contract Specialist position that Herrera held prior to being promoted required "thorough knowledge" of contracting principles and contract types and "an understanding" of a wide

23

range of business and industrial practices, while the official
Position Description for the GS-13 Contract Specialist position to
which Herrera was promoted required "comprehensive knowledge" of
contracting principles and contract types and "extensive knowledge"
of business and industrial practices. Id. exs. A-11, A-12.
According to Plaintiff, "Herrera's one (1) year as a [GS-12]
Contract Specialist did not afford her the opportunity to progress
from a 'thorough knowledge and understanding' to a 'comprehensive
and extensive knowledge' that the [GS-13] position required."
Document No. 36 at 6.  Plaintiff provides no summary judgment
evidence in support of this conclusory argument, however, and the
bare argument itself does not refute Defendant's explanation that
Herrera was the better qualified applicant for the GS-13 position.

The uncontroverted summary judgment evidence is that Poole, as
the Selecting Officer for the GS-13 Contract Specialist position in
question, reviewed the applications of and interviewed all of the
8-10 applicants for the position, including Plaintiff and Herrera.
See Document No. 30 ex. A ¶¶ 1-4.  After interviewing the
applicants, Poole determined that Herrera was the best qualified,
due in particular to her extensive background as a price analyst,
her history of consistently receiving performance awards, her
consistently high work performance, her aptitude and ability to
grasp complex issues quickly, her good judgment, and her "self
starter" attitude.  Id. ex. A ¶¶ 6-10.  Poole's assessment of

24

Herrera's capabilities is supported by overwhelming summary judgment evidence. <u>Id.</u> ex. B ¶¶ 2-3; ex. D ¶¶ 10-11, 14; ex. E ¶¶ 15-18.  On the other hand, Poole determined, Plaintiff had only a little pricing experience, had not received a performance award since 1996, often had to redo her work, had difficulty working independently and required extensive guidance and oversight from her colleagues and superiors, and had a history of performance problems and time and attendance issues with several managers. <u>Id.</u> ex. A ¶¶ 6-8, 10, 19.   Poole's assessment of Plaintiff's performance is also supported by substantial summary judgment evidence. <u>Id.</u> ex. B ¶¶ 2-3; ex. C ¶¶ 5-8; ex. D ¶¶ 6-9, 12-13; ex. E ¶¶ 2-3 6-14.  Although Plaintiff met the objective criteria for the GS-13 position, nothing in the summary judgment record gives rise to so much as a genuine issue of material fact that Plaintiff was clearly better qualified than Herrera.  To the contrary, the uncontroverted summary judgment evidence establishes that Herrera was universally regarded as an exceptional employee who was the best qualified candidate for the GS-13 position.  Plaintiff has failed to satisfy her burden of raising a genuine issue of material fact on pretext, and Defendant's motion for summary judgment will therefore be granted.

### III.  <u>Order</u>

For the reasons set forth, it is hereby

ORDERED that Defendant's Motion to Dismiss (Document No. 29) and Motion for Summary Judgment (Document No. 30) are GRANTED, and Plaintiff's Title VII, ADEA, and 42 U.S.C. § 1983 claims are DISMISSED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 31st day of July, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE